# STATE MUTUAL LIFE ASSURANCE COMPANY v. OLIVER IRON MINING COMPANY AND OTHERS.[1]

November 9, 1923.

No. 23,469.

**Refusal to reform lease because of mutual mistake sustained.**

1. The facts stated in the opinion did not require the trial court to find that a lease failed to express the real understanding of the parties, owing to a mutual mistake. Its refusal to reform the provisions of the lease with respect to repairs is sustained by the evidence.

[1]Reported in 195 N. W. 632.

**Lessor held bound to replace worn out parts of elevators.**

> 2. Such provisions obligated the lessees to keep the building in good repair, except as to ordinary wear and tear and repairs and renewals on account of damage by fire or the elements or other causes extraneous to the lessees' use and occupancy, and obligated the lessor to make such repairs as came within the exceptions. Under this construction of the lease, it was the duty of the lessor to repair or replace parts of the elevators in the building which wore out while in ordinary use.

Action in the district court for St. Louis county to recover $2,-515.81 and interest. The case was tried before Magney, J., who made findings and ordered judgment in favor of defendants, dismissing the action. Plaintiff's motion for amended findings and conclusions was denied. From a judgment for costs in favor of defendants, plaintiff appealed. Affirmed.

*Fryberger, Fulton, Hoshour & Ziesmer,* for appellant.

*Crassweller & Crassweller, Frank W. Adams* and *Elmer F. Blu,* for respondents.

LEES, C.

Plaintiff is the lessor and defendants the lessees of an office building in the city of Duluth. Their inability to agree upon the meaning of certain provisions of the lease is the cause of this litigation.

The lease was executed June 9, 1911, and was for a term of 20 years, beginning May 1, 1912. Rent was to be paid on the basis of 5 per cent of the entire cost of the ground, the building and an addition which was to be constructed. When the lease was executed, defendants were occupying the building under a lease from plaintiff's grantor for a term of 10 years, expiring April 30, 1912. In this lease the rent was fixed at 6 per cent of the cost of the property and the lessees were obligated to pay taxes and assessments and the cost of "all repairs and improvements of whatever nature inside and outside of the building." In the second lease the provision for the payment of taxes and assessments was the same, but not so as to the provision for repairs. That subject was covered by several clauses which are neither clear nor harmonious. We quote the pertinent language:

"And the lessees do hereby further covenant  *  *  *  that they will  *  *  *  keep  *  *  *  said building both inside and outside, and appurtenances, in good and substantial repair  *  *  * and in as good condition as said premises shall be on the completion of said building, ordinary wear and tear alone excepted  *  *  *. The lessor  *  *  *  at all reasonable times may enter to view the premises and to make any repair which it may desire to make, and to make any improvement in the nature of repairs which it may find necessary to make, to protect its interest in said estate, and while the lessor is not to be considered hereby bound to make any repairs or improvements at its own expense which the lessees are required to make  *  *  *  it shall make such repairs as the lessees are not hereby required to make, it being understood that the lessees shall keep the building in good repair not including, however, ordinary wear and tear or repairs or renewals on account of damage by fire or the elements and of other causes or things extraneous to the use and occupancy of said premises by the lessees."

Referring to the rent to be paid when two stories had been added, the items of expense which should represent the cost of the property were specified, followed by this language:

"Which sums all together shall be taken as the principal upon which the rent shall be determined at the rate of five per cent (5%) per annum net for the term of this lease."

On September 2, 1914, after the addition to the building had been completed, the parties executed an instrument, reciting that the total cost of the property was $506,691.02; and that the annual rental, which was payable quarterly, was 5 per cent of that amount, or $25,334.55. About six months theretofore the representative of the defendants had suggested to plaintiff's representative that certain changes should be made in the lease, specifying them in a memorandum prepared either under the direction or with the approval of defendants' legal advisors. The suggestion did not meet with favor and the changes were not made. One was worded as follows:

"Omit the clause beginning in the 2nd line from the bottom of page 3 and reading as follows: 'It being understood that the lessees shall keep the building in good repair not including, however, ordinary wear and tear or repairs or renewals on account of damage by fire or the elements and of other causes or things extraneous to the use and occupancy of said premises by the lessees.' And substitute therefor the following: 'including all necessary repairs and renewals on account of ordinary wear and tear and on account of causes or things extraneous to the use and occupancy of said premises by the lessees.' "

There were passenger and freight elevators in the building, operated by defendants' employes. In the usual and proper use of the elevators, certain parts wore out and it was necessary to replace them. Defendants requested plaintiff to make the replacements, but it refused, taking the position that the lease did not obligate it to make repairs of that nature. During the years 1918, 1919 and 1920, defendants had the repairs made. The reasonable value thereof was $2,515.81, which defendants paid and deducted from the rent as it fell due. In 1921 this action was brought to recover the sums which had been withheld. It was brought on the theory that the lessor was not bound to keep the elevators in repair, but, if the language of the lease imposed that duty, through inadvertence and mistake, it failed to express the contract into which the parties had actually entered, and hence the lease should be reformed.

The court found that the lease did express the real understanding and agreement of the parties, that there was no mistake in it, and that it obligated plaintiff to make repairs necessitated by ordinary wear and tear. Judgment for a dismissal on the merits was ordered and entered after the denial of a motion for amended findings, and plaintiff has appealed from the judgment.

Two questions are presented: The first, whether by the terms of the lease plaintiff was obligated to repair the elevators; and the second, whether the lease should be reformed if its language imposed upon plaintiff the duty to make such repairs. The briefs discuss the second question first, and we will consider the questions in the same order.

1.   In the negotiations which preceded the execution of the lease, both parties were represented by men accustomed to deal with large affairs, and the phraseology of the lease was approved by able lawyers. It is difficult to believe that the meaning of the words used or their legal effect was not understood or that the language does not express the meaning it was intended to convey.   We have not overlooked the fact that the terms of the first lease were more advantageous to the lessor than those of the second, nor the testimony of the lessor's representatives that throughout the negotiations they insisted that the lessor should receive a net return of 5 per cent upon its investment, nor the testimony of men familiar with Duluth rentals as to what is the usual return upon their investment to the owners of office buildings occupied by one or more tenants.   But the outstanding fact is that the first lease clearly and definitely obligated the lessees to make all repairs of every kind and nature, while the second did not.   In place of the explicit language of the first lease, there is found the somewhat ambiguous and contradictory language already quoted.   It is inconceivable that the radical change of phraseology went unnoticed or was not under consideration as the several clauses of the lease were drafted and discussed at the final meeting of the representatives of the parties.   Much stress is laid on the request for a modification of the repair clause, made when the addition to the building was completed.   At some time prior thereto it must have dawned on the lessees that the language was ambiguous.   They endeavored to clear up the ambiguity by getting from the lessor an express agreement to make ordinary repairs. However, it cannot be said that in so doing they placed a practical construction upon the lease or unqualifiedly admitted that, as written, no obligation to make such repairs rested upon the lessor.   It is a familiar rule that, to justify a reformation, the essential facts must be proved by clear and convincing evidence, that is, by more than a mere preponderance of evidence.   Considering all the facts and circumstances and applying this rule, we hold that the court was warranted in finding that the lease embodies and expresses the real understanding and agreement of the parties and in denying a reformation of the provisions for repairs.

2. Both parties recognize the rule that, in the absence of an express agreement, a landlord owes his tenant no duty to make repairs. Plaintiff asserts that the language of the lease expresses no such agreement, and defendants assert that it does. Leases, like other written instruments, are to be so construed as to give effect to the intention of the parties as expressed in the language they use. It has been said that doubts and uncertainties as to the meaning of a provision in a lease should be resolved against the lessor. Hanley Falls Creamery Co. v. Milton Dairy Co. 126 Minn. 226, 148 N. W. 46. We do not stop to inquire whether this should be the rule where the lease is not prepared by the lessor alone so that its language may be said to be of his own choosing. In the instant case the lessees' representatives selected the language and the lessor did not object to it. In a way both parties are responsible for its ambiguity.

The prominent features of the lease are these: The rent was to be 5 per cent of the cost of the property, according to one provision of the lease, and, according to another, 5 per cent net. The lessees were to keep the building in as good repair as it was when completed, except for ordinary wear. Then comes a statement of the self-evident proposition that the lessor should not be bound to make repairs which the lessees were required to make, followed by the statement that the lessor should make such repairs as the lessees were not bound to make, and that, although the lessees should keep the building in good repair, this obligation should not include repairs necessitated by ordinary wear or damage by fire or the elements, or by other causes extraneous to the lessees' use and occupation of the building. As we read the lease, both parties assumed certain obligations with respect to repairs. The lessees were bound to keep the building and appurtenances in good repair, except for ordinary wear, damage by fire or the elements or other causes extraneous to their use and occupation. The lessor was bound to make such repairs as fell within the above mentioned exceptions.

Counsel for plaintiff contend that, if this is to be the interpretation, the lessees' obligation is little better than none at all. They urge that the proper interpretation is one which would place on the

lessees a duty to make all repairs necessary to their enjoyment of their right of occupancy, but which would not require them to restore the property at the end of the term in the identical condition in which it was at the beginning, and say, quoting the language of a witness for the defendants, that the lessor's covenant does not cover simple repairs which might come up from day to day. The lessor affirmatively covenanted that it would "make such repairs as the lessees are not   *   *   *   required to make." The lessees were not required to make repairs necessitated by ordinary wear. The repairs to the elevators were needed because parts wore out.

Several witnesses testified that with careful usage certain parts of elevators will become so worn that they must be replaced after 12 or 15 years' service. The elevators in question were installed when the building was erected in 1902 and were in continuous service thereafter. It was inevitable that parts would have to be replaced before the term of the second lease expired. When the first lease was made, the building and elevators were new. There was little likelihood that any repairs of consequence would have to be made during the term of that lease. When the second lease was made, circumstances had changed. It is not an unreasonable supposition that the lessees were unwilling to carry the burden of ordinary repairs for 20 years more. Of course the reduction in rent and the assumption by the lessor of the obligation to make ordinary repairs gave the lessees a much better bargain than they secured when the first lease was executed. That is a consideration bearing directly on the issue of reformation, but only indirectly on the issue as to the proper interpretation of the lease.

After full and careful consideration of the language of the lease, the circumstances attending its execution, and the arguments of counsel, we reach the conclusion that the lessor assumed the obligation to make the repairs and replacements which became necessary by reason of ordinary wear incidental to the lessees' proper use of the elevators. The result is that the trial court's interpretation of the lease must be sustained.

Judgment affirmed.